UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

--------------------------------------------------------- X
                                  :

PARAMOUNT PICTURES CORPORATION,
a Delaware corporation,
                                  :

               Plaintiff,        :      Civil Action No.

         -against-              :

CHRIS MOUKARBEL,            :

            Defendant.       :

--------------------------------------------------------- X

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

STANLEY M. BRAND
D.C. Bar #213082
ANDREW D. HERMAN
D.C. Bar # 462334
BRAND LAW GROUP
923 Fifteenth Street, N.W.
Washington, D.C. 20005
(202) 662-9700

JONATHAN ZAVIN
ALEXANDRA N. DENEVE
SUNNY S. PARK
LOEB & LOEB LLP
345 Park Avenue
New York, New York 10154
(212) 407-4000

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................ii

PRELIMINARY STATEMENT ............................................................................................1

    I.     BACKGROUND FACTS...........................................................................................2

           A.    Paramount's Major Motion Picture *World Trade Center*. ............2

           B.    Defendant's Infringement of the WTC Screenplay. ......................3

    II.    LEGAL STANDARD FOR PRELIMINARY INJUNCTION.................4

    III.   PARAMOUNT CAN SHOW A SUBSTANTIAL LIKELIHOOD THAT IT WILL PREVAIL ON THE MERITS OF ITS COPYRIGHT INFRINGEMENT CLAIM................................5

           A.    Paramount Owns a Valid Copyright For the WTC Screenplay...........................................................................................5

           B.    Defendant Copied the WTC Screenplay.......................................5

    IV.   PARAMOUNT WILL SUFFER IRREPARABLE HARM IF DEFENDANT IS NOT ENJOINED FROM DISTRIBUTING HIS FILM...........................................................................................................6

    V.    AN INJUNCTION WILL NOT HARM THE DEFENDANT.................8

    VI.   AN INJUNCTION IS IN THE PUBLIC INTEREST. .............................9

    VII.  CONCLUSION......................................................................................................10

## TABLE OF AUTHORITIES

### CASES

Page(s)

*Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.*,
   25 F.3d 119 (2d Cir. 1994)......................................................................................8

*Hart v. Sampley*,
   Case No. CIV. A. No. 91-3068, 1992 WL 100135 (D.D.C. Feb. 4,
   1992) ........................................................................................................6, 9

*Health Ins. Ass'n of Am. v. Novelli*,
   211 F. Supp. 2d 23 (D.D.C. 2002)............................................................4

*Paramount Pictures Corp. v. Carol Publ'g Group*,
   11 F. Supp. 2d 329 (S.D.N.Y. 1998), *aff'd*, 181 F.3d 83 (2d Cir. 1999) ...............6, 8

*WPOW, Inc. v. MRLJ Entes.*,
   584 F. Supp. 132 (D.D.C. 1984)......................................................5, 6-7, 9

*Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*,
   559 F.2d 841 (D.C. Cir. 1977)..................................................................5

### STATUTES

17 U.S.C. § 106.........................................................................................................7

17 U.S.C. § 410(c) ....................................................................................................5

## PRELIMINARY STATEMENT

Paramount Pictures Corporation ("Paramount") brings this motion for expedited relief to prohibit the distribution of Defendant Chris Moukarbel's film. Defendant's film is an intentional infringement of Paramount's valuable copyright in the screenplay for the upcoming motion picture *World Trade Center*, and an injunction is necessary to protect the value and integrity of Paramount's work.

This August, Paramount will release the theatrical motion picture *World Trade Center*, which is about the survival and rescue of two Port Authority officers from the rubble of the World Trade Center collapse on 9/11. Paramount has spent one hundred million dollars to produce and market this film. The August release date of Paramount's movie has been preempted, however, by Defendant's intentional infringement of the *World Trade Center* screenplay. According to his own website, Defendant made a twelve-minute motion picture from a copy of the *World Trade Center* screenplay, which he improperly obtained, and released his film on the Internet, making it available to millions of people around the world. Defendant's film is virtually identical to a significant and crucial portion of the *World Trade Center* screenplay.

Paramount brings this motion for a preliminary injunction and temporary restraining order to cease the distribution of Defendant's film. Defendant's infringement is self-evident, admitted by the Defendant, and confirmed by analysis, thus giving Paramount a substantial likelihood of success on the merits of its claim. Absent an injunction, Paramount will suffer irreparable harm to the value and reputation of its motion picture, while Defendant will suffer no harm from an injunction against the distribution of a film from which it is unlikely he has derived any income at all, given its

free dissemination on the Internet. Accordingly, Paramount requests that the Court grant

the instant motion enjoining distribution of Defendant's film.

## I.    BACKGROUND FACTS.

### A.    Paramount's Major Motion Picture *World Trade Center*.

On August 9, 2006, Paramount will theatrically release the major motion

picture *World Trade Center* (the "WTC Film") on over 1500 theater screens nation wide.

(Declaration of Gerry Rich, ¶ 3) The WTC Film tells the true story of John McLoughlin

and Will Jimeno, two Port Authority officers who were two of the last people to be

rescued from the World Trade Center on 9/11 after being trapped for many hours

underneath the rubble. (Declaration of Pamela Abdy, ¶ 6) The WTC Film is directed by

the renowned director Oliver Stone, stars Oscar-winning actor Nicolas Cage, and it is

produced with the full cooperation and support of Mr. McLoughlin and Mr. Jimeno. (Id.,

¶¶ 3, 6) Due to the subject matter of the WTC Film, and the reputation of Oliver Stone,

the WTC Film has received a substantial amount of advance publicity for the past six

months, and it is a highly anticipated film. (Rich Decl, ¶ 4) Paramount expects the WTC

Film to be one of its major summer releases. (Id.)

Paramount acquired all rights to, and is the sole owner of, the screenplay

for the WTC Film written by Andrea Berloff (the "WTC Screenplay"). (Abdy Decl., ¶ 4)

Production of the WTC Film began on October 19, 2005, and principal photography was

completed on February 9, 2006. (Abdy Decl., ¶ 8) All post-production on the WTC

Film, including the reproduction of film prints, is scheduled to be completed by July 31,

2006. (Id.) Paramount has spent approximately $60 million to produce the WTC Film.

(Id., ¶ 10) Paramount has, or will, spend approximately $40 million to advertise and

release the WTC Film. (Rich Decl., ¶ 3)

Paramount obtained a valid and enforceable United States Copyright

Registration for the WTC Screenplay dated June 25, 2005, on October 14, 2005, number

PAu2-991-373.  (Declaration of Karen Magid, ¶¶ 2-3, Exh. A)  Paramount is the

exclusive owner of all rights in and to the copyright for the WTC Screenplay.  (Id.)  The

final WTC Film is substantially based on the registered WTC Screenplay.  (Abdy Decl.,

¶ 5)

        **B.**      **Defendant's Infringement of the WTC Screenplay.**

On information and belief, Defendant Chris Moukarbel ("Defendant") is

an individual living in Washington, D.C.  On information and belief, Defendant

improperly obtained a copy of the WTC Screenplay and made a twelve-minute motion

picture that is a replication of a substantial and crucial portion of the WTC Film (the

"Moukarbel Film").  (Declaration of Alexandra DeNeve, Exhs. A, C-D; a DVD of the

Moukarbel Film is attached to the Declaration of Antoinette Pepper as Exhibit A)  A

comparison has been made between the Moukarbel Film and the registered WTC

Screenplay; this comparison confirms that the Moukarbel Film is a virtually word-for-

word replication of significant portions of the registered WTC Screenplay.  (Declaration

of Antoinette Pepper, ¶ 3, Exhs. A-B; Magid Decl., Exh. B)

The Moukarbel Film is currently available for display and/or distribution

on the Internet, including the website, www.pointsofdeparture.net, which is registered to

the Defendant himself.  This site enables visitors to view and download the Moukarbel

Film, and describes the film as a:  "12 minute movie adapted from a bootleg script for

Oliver Stone's soon to be released film *World Trade Center*."  (DeNeve Decl., ¶¶ 2-3,

Exhs. A-B)  The Defendant then lists his email address, chrismoukarbel@hotmail.com.

In addition to this site, the following websites,

www.filmmakermagazine.com/blog/2006/06/advance-copy.php and

www.mcnblogs.com/mcindie/archives/2006/06/world_trade_cen.html promote the

Moukarbel Film and provide hyperlinks to the "points of departure" website. (Id., ¶ 4,

Exhs. C-D)  According to the Filmmaker Magazine site, the release of the Moukarbel

Film was released on the Internet to "intentionally pre-empt[] [Oliver] Stone's film

release in August 2006." (Id., ¶ 4, Exh. C)

Paramount brings this motion for a temporary restraining order and

preliminary injunction against the distribution of the Moukarbel Film on the Internet or

through any other means. The Moukarbel Film is an intentional infringement of the

WTC Screenplay designed to preempt, impair, and profit from, the highly anticipated

release of the WTC Film. Continued distribution of the infringing film is causing and

will continue to cause irreparable harm to Paramount. Expedited relief is the only means

by which Paramount can prevent the widespread distribution of the Moukarbel Film.

## II.    LEGAL STANDARD FOR PRELIMINARY INJUNCTION.

In this Circuit, a preliminary injunction requires a showing (1) of

substantial likelihood that the movant will prevail on the merits; (2) of irreparable harm

to the movant without an injunction; (3) that the issuance of an injunction would not

substantially harm the other party; and (4) that awarding relief is in the public interest.

*See Health Ins. Ass'n of Am. v. Novelli*, 211 F. Supp. 2d 23, 28 (D.D.C. 2002) (citing

*Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843

(D.C. Cir. 1977)). In applying this test, the Court should employ a sliding scale where a

strong showing on one factor can compensate a weakness in the other. *Id.* Here,

Paramount can make a strong showing on each of these factors.

## III.    PARAMOUNT CAN SHOW A SUBSTANTIAL LIKELIHOOD THAT IT WILL PREVAIL ON THE MERITS OF ITS COPYRIGHT INFRINGEMENT CLAIM.

Paramount will prevail on its copyright claim because it can show 1)

ownership of a valid copyright; and 2) copying of the copyrighted work. *See WPOW,*

*Inc. v. MRLJ Entes.*, 584 F. Supp. 132, 136 (D.D.C. 1984).

### A.    Paramount Owns a Valid Copyright For the WTC Screenplay.

Registration certificates are *prima facie* evidence of the validity of the

copyright and of all facts stated in the certificate. *See* 17 U.S.C. § 410(c). Paramount

owns a valid United States copyright registration for the WTC Screenplay dated June 25,

2005, that issued on October 14, 2005. (Magid Decl., Exh. A).

### B.    Defendant Copied the WTC Screenplay.

Copying may be shown by either direct evidence of copying or

circumstantial evidence of 1) defendant's access to the copyrighted work; and 2)

substantial similarity of ideas and expression between the copyrighted work and the

accused work. *See WPOW, Inc.*, 584 F. Supp. at 136. Here, Paramount has both types of

evidence to show Defendant's copying of the WTC Screenplay.

Paramount's direct evidence comes from the Defendant himself. The

Defendant's own website claims that the Moukarbel Film is derived from a "bootleg

script" of the WTC Film, an admission that concedes his direct copying of the WTC

Screenplay. (DeNeve Decl., Exhs. A-B)

Paramount also has circumstantial evidence of Defendant's copying.

First, Defendant's own website indicates that he had access to the WTC Screenplay. (Id.)

Second, a comparison between the Moukarbel Film and the registered copy of the WTC Screenplay demonstrates that the Moukarbel Film is virtually identical (and certainly substantially similar) to the dialogue, plot, setting, and characters of a significant portion of the WTC Screenplay. (A comparison of the dialog in the WTC Screenplay and the Moukarbel Film is attached to the Declaration of Antoinette Pepper, Exh. B; *see also* Magid Decl., Exh. B) *See Paramount Pictures Corp. v. Carol Publ'g Group,* 11 F. Supp. 2d 329, 334 (S.D.N.Y. 1998), *aff'd,* 181 F.3d 83 (2d Cir. 1999) (copyright infringement may occur by a substantial similarity that involves even a small portion of the infringed work) (citation omitted).

In summary, both the Moukarbel Film and the WTC Screenplay center around two uniformed characters named "John McLoughlin" and "Will Jimeno" who are trapped under the debris after the 9/11 attack on the World Trade Center. In both works, the scene takes place in the "elevator vestibule on the concourse between Towers One and Two." The dialogue and sequence of events are almost identical.

Paramount has a likelihood, and in fact a certainty, of success on the merits of its copyright claim against the Defendant, thus entitling Paramount to a temporary restraining order and preliminary injunction.

## IV. PARAMOUNT WILL SUFFER IRREPARABLE HARM IF DEFENDANT IS NOT ENJOINED FROM DISTRIBUTING HIS FILM.

"A copyright holder may be presumed to suffer irreparable harm as a matter of law when his right to the exclusive use of copyrighted material is invaded, and such a holder is entitled to a preliminary injunction without a detailed showing of such harm." *Hart v. Sampley,* Case No. CIV. A. No. 91-3068, 1992 WL 100135, at *3 (D.D.C. Feb. 4, 1992) (citing *Atari, Inc. v. North Am. Philips Consumer Electronics*

NY495197.2
20282810023
06/15/2006 ap

6

*Corp.*, 672 F.2d 607, 620 (7th Cir. 1982)); *see also WPOW, Inc.*, 584 F. Supp. at 138. Paramount has the evidence to show that it will prevail on the merits of its claim, and is thus entitled to the presumption of irreparable harm.

Paramount does not need to rely on the presumption alone. The harm to Paramount's investment in this case is self-evident. Paramount's ownership of the copyright in the WTC Screenplay entitles it to, among other things, the exclusive right to display, use, distribute, and create derivative works from, the copyright. *See* 17 U.S.C. § 106. The Moukarbel Film deprives Paramount of these exclusive rights, including the right to be the first, not just the only, entity to distribute this work to the public. Paramount owns the rights to the WTC Screenplay, and thus the right to be the first and the only entity to tell this important story. The Moukarbel Film deprives Paramount of that valuable right. (Rich Decl., ¶ 5)

In addition, the Moukarbel Film could cause the public to form an adverse opinion of the WTC Film before it is even released. An enormous amount of effort, talent, and expense has been devoted to making a motion picture that will honor the courage and heroism of the many selfless rescue workers and civilians who came to the aid of their neighbors and colleagues on 9/11. (Id., ¶ 6) A comparable amount of resources has been devoted to ensuring that the WTC Film is marketed to the public in a manner that is respectful and appropriate in light of the story being told. (Id.) Some of the most talented people in the film business, including Oscar winners Oliver Stone and Nicolas Cage, were engaged to direct and act in this film. (Id.)

In sharp contrast, the Moukarbel Film was apparently made for very little money with student actors. (DeNeve Decl., Exhs. C-D) Its quality is obviously much

lower than that of Paramount's motion picture. Defendant's release of his film on the Internet makes it available nation wide, and world wide, at all times and instantaneously to anyone with access to a computer and the Internet; thus the potential reach of the Moukarbel Film is incalculable. The preemptive release of the Moukarbel Film on the Internet before Paramount's WTC Film means that unquantifiable but, most likely, large numbers of people will see the Moukarbel Film first for free and determine, based on this poor-quality copy, that they do not want to pay to see the remainder of the WTC Film at a theater when it is released. (Rich Decl., ¶ 7) They may even mistakenly believe that the Moukarbel Film is sanctioned by Paramount and represents the quality of the WTC Film, which harms the reputation of Paramount, the artists involved, and indeed denigrates the story itself. (Id.) *See Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.*, 25 F.3d 119, 124 (2d Cir. 1994) (irreparable harm caused by confusion in the marketplace and damage to plaintiff's reputation from poor-quality infringing product). This type of harm cannot be calculated and is thus irreparable, and can only be ameliorated by an immediate injunction removing the Moukarbel Film from distribution.

Further, given that Defendant is unlikely to receive any income from the Moukarbel Film, money damages are not available. Even if they were, relying on the availability of money damages would make Paramount an involuntary licensor of its copyright. "Such a policy would considerably weaken the integrity of a copyrighted work." *Paramount Pictures Corp.*, 11 F. Supp. at 338.

## V.    AN INJUNCTION WILL NOT HARM THE DEFENDANT.

It is highly unlikely that Defendant will be able to show any harm from an injunction against the distribution of the Moukarbel Film. It appears that Defendant is

self-distributing the film, therefore he has no contract with a distributor at risk. Because

he is disseminating the film on the Internet, where it is viewable at no cost, it is unlikely

that Defendant has received, or will receive, any income from the Moukarbel Film. It

does not appear that Defendant has made a significant investment in the Moukarbel Film.

(See DeNeve Decl., Exhs. C-D) Even if he had, "courts have recognized that the benefits

defendants might have received from violating the copyright laws are not benefits to be

protected from injury." *Hart*, 1992 WL 100135, at *3 (citation omitted); *see also*

*WPOW, Inc.*, 584 F. Supp. at 138 ("[T]he balance of injuries favors the copyright holder

whose rights have been infringed."). Therefore, Defendant has no cognizable harm that

can weigh against the significant harm (as set forth above) that Paramount is suffering

now and will continue to suffer unless and until the Moukarbel Film is no longer

distributed in any fashion.

## VI.    AN INJUNCTION IS IN THE PUBLIC INTEREST.

An injunction that protects and upholds the value of a copyright and the

exclusive rights it confers on a copyright holder is always in the public interest. *See*

*Hart*, 1992 WL 100135, at *3 ("The public interest clearly lies with the enforcement of

its copyright laws."); *WPOW, Inc.*, 584 F. Supp. at 138 (same). Further, avoiding the

confusion that the Moukarbel Film can cause among the public, who may think that this

film is representative of the quality of the WTC Film and therefore choose not to see

Paramount's film, is also in the public interest. This WTC Film is the first motion picture

that tells this particular, and important, story of 9/11. (Abdy Decl., ¶ 7) The WTC Film

honors the courage and heroism of the many Americans who were affected by the events

of that day. (Id.) Significantly, the WTC Film was produced with the blessing and

hear this story for the first time as it was intended to be told, and not via someone who has absolutely no authority to make a film from the WTC Screenplay. For all these reasons, an injunction against the distribution of the Moukarbel Film is in the public interest.

## VII.    CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that the Court grant its Motion and enter the proposed order submitted herewith.

Dated:  6/16/06

Respectfully submitted,

STANLEY M. BRAND
D.C. Bar # 213082
ANDREW D. HERMAN
D.C. Bar # 462334
BRAND LAW GROUP
923 Fifteenth Street, N.W.
Washington, D.C.  20005
(202) 662-9700

JONATHAN ZAVIN
ALEXANDRA N. DENEVE
SUNNY S. PARK
LOEB & LOEB LLP
345 Park Avenue
New York, New York  10154
(212) 407-4000

Attorneys for Plaintiff
Paramount Pictures Corporation